**COLORADO HOMES, LTD.,** a Colorado corporation; **I. Barry Rein,** individually; and **Debra L. Rein,** individually, Plaintiffs–Appellants and Cross–Appellees,

v.

Charles **LOERCH–WILSON** and Luan M. Loerch–Wilson, Defendants– Appellees,

and

Trail Ridge Association, Inc., d/b/a Cross Creek Homeowners Association, Inc., a Colorado corporation; and Colorado Property Management Group, Inc., a Colorado corporation, Defendants–Appellees and Cross–Appellants.

No. 00CA1193.

Colorado Court of Appeals, Div. IV.

Dec. 20, 2001.

Rehearing Denied Feb. 21, 2002.

Burg Simpson Eldredge Hersh & Jardine, P.C., Michael S. Burg, Diane Vaksdal Smith, Englewood, CO, for Plaintiffs–Appellants and Cross–Appellees.

Orten & Hindman, P.C., Thomas J. Hindman, William H. Short, Wheat Ridge, CO, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge RULAND.

This dispute arises out of the purchase by defendants Charles Loerch–Wilson and Luan M. Loerch–Wilson of a new home in a subdivision, complaints regarding the warranty repair work on the structure, and the enforcement of the restrictive covenants governing that subdivision. Plaintiffs, Colorado Homes, Ltd., I. Barry Rein, and Debra L. Rein, appeal from a partial summary judgment dismissing one claim and from other provisions of the judgment entered following a jury verdict. Defendants Trail Ridge Association, Inc., d/b/a Cross Creek Homeowners Association, Inc. (HOA), and Colorado Property Management Group, Inc. (CPMG), cross-appeal still other provisions of the judgment. We affirm in part, reverse in part, and remand the case for further proceedings.

Restrictive covenants for the subdivision were adopted in 1985. Thereafter plaintiff Colorado Homes acquired certain lots in the subdivision and constructed homes on some of the lots, including the home sold to the Wilsons. Plaintiffs I. Barry Rein and Debra L. Rein own and operate Colorado Homes.

Following construction of their residence, the Wilsons made numerous complaints about the quality of the warranty work done on the structure, as well as the failure to do other warranty work. The dispute escalated when Charles Loerch–Wilson commenced picketing in the subdivision, complaining that Colorado Homes refused to do warranty work. Wilson also contacted a number of prospective customers of Colorado Homes and complained about the warranty issue. Finally, the dispute intensified when various judicial proceedings were filed for restraining orders and misdemeanor criminal offenses.

CPMG was engaged by the HOA as its agent to manage the association. During the fifteen months the dispute continued, the Reins made verbal requests to the HOA and CPMG to take action to prevent the Wilsons from pursuing the picketing activity and from displaying a sign. However, no action was taken for an extended period of time.

Ultimately, counsel for the HOA wrote a letter to the Wilsons demanding that they desist from displaying the sign in their garage window. Shortly thereafter the Wilsons terminated their activities and later sold their home.

Plaintiffs commenced this action asserting a number of tort claims against the Wilsons. In response, the Wilsons alleged various counterclaims. Prior to trial the HOA and CPMG were joined as defendants, and plaintiffs alleged both tort and contract claims against them. As pertinent here, the HOA acknowledged that a contract between it and

the lot owners existed that obligated the HOA to enforce the restrictive covenants, subject to certain defenses. However, the tort claim for breach of fiduciary duty was dismissed by summary judgment.

Following a jury trial on the other claims and as pertinent here, the jury returned a verdict for plaintiffs and against Charles Loerch–Wilson on a claim for negligence and awarded total damages of $122,800. The jury also found in favor of plaintiffs and against both Wilsons on a claim for libel and slander and awarded total damages of $122,800. Finally, the jury found in favor of plaintiffs and against Charles Loerch–Wilson on a claim for intentional interference with business relationships and awarded $365,400 in damages.

On the contract claims against the HOA and CPMG, the jury entered a verdict for Colorado Homes for $1 against the HOA and $2 against CPMG.

As to the counterclaims, the jury entered a verdict for Charles Loerch–Wilson on an abuse of process claim and awarded damages of $25,000. The jury also entered a verdict for both Wilsons on a claim for fraud against the Reins and awarded total damages of $20,001.

I.

Colorado Homes contends that the trial court erred in granting a partial summary judgment dismissing its tort claim for breach of fiduciary duty against HOA and CPMG. According to Colorado Homes, these defendants owed a fiduciary duty to it as a lot owner to act in good faith in enforcing the restrictive covenants. As a result, Colorado Homes argues, the trial court erred in concluding that the economic loss rule set forth in *Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256 (Colo.2000), barred this claim. We agree that *Town of Alma* does not bar this claim.

A.

■ Initially we address and reject defendants' contention that we may not address this issue because Colorado Homes did not plead an express breach of fiduciary claim in its fourth amended complaint for relief.

The fiduciary duty theory with supporting authority was included in Colorado Homes' response to defendants' motion for summary judgment. And, the trial court expressly considered and rejected this theory in its order granting summary judgment. Accordingly, to seek to amend the complaint thereafter to include a breach of fiduciary duty claim would have been an act of futility. *See Higley v. Kidder, Peabody & Co.,* 920 P.2d 884 (Colo.App.1996)(the law does not require a party to perform a futile act in order to assert an important right).

B.

■ As noted, the parties agree that a contract existed in this case between the HOA and the lot owners in the subdivision requiring the HOA to enforce the restrictive covenants. The jury was so instructed. Hence, we need not, and we do not, express any opinion as to the nature of and theory behind this contract. Instead, the issue is whether this contract forecloses plaintiffs from asserting a claim for breach of a fiduciary duty to enforce those covenants.

As pertinent here, it is agreed that a sign displayed by the Wilsons in their garage window violated the covenants. Colorado Homes also asserted that the picketing activity violated the covenant provision prohibiting "noxious" activity by residents of the subdivision.

■ A duty, independent of any contract, to construct a home without latent defects has been imposed upon a builder for the benefit of subsequent purchasers. *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983). This duty is based upon public policy considerations necessary to protect inexperienced home buyers from overreaching by more knowledgeable builders, given that the purchase of a residence may be the most significant investment in the purchaser's lifetime. *See Town of Alma v. Azco Constr., Inc., supra.*

Courts in other jurisdictions have also recognized a fiduciary duty of the homeowners association to the homeowner to enforce re-

strictive covenants. *See Cohen v. Kite Hill Cmty. Ass'n,* 142 Cal.App.3d 642, 191 Cal. Rptr. 209 (1983); *see also* Wayne S. Hyatt, *Condominium and Homeowner Association Practice: Community Association Law* 60 (1981). This duty has been imposed in recognition of the power held by homeowner associations, the quasi-governmental functions they serve, and the impact on value and enjoyment that can result from the failure to enforce covenants.

Accordingly, given these public policy considerations, we conclude that the trial court erred in granting summary judgment dismissing the breach of fiduciary claim against these defendants. In short, because a duty arises based upon policy considerations that are independent of any contract, the claim may be pursued. Otherwise, the home buyer making the most significant purchase of a lifetime would be protected from latent defects created by a builder under the *Cosmopolitan* decision, but not from the arbitrary enforcement of covenants that could have an equally or possibly more adverse impact upon the value of a residence.

Accordingly, on remand, Colorado Homes should be permitted to allege this claim and the HOA and CPMG shall be entitled to respond in order to assert any defenses they deem appropriate.

## II.

◼ Plaintiffs contend that the trial court erred in vacating the damage award against the Wilsons for negligence as duplicative of the award for intentional interference with business relations. According to plaintiffs, the court must have relied on the Wilsons' hearsay reference to an interview with the jury foreperson, and they argue that CRE 606(b) precludes use of that information to set aside the verdict. We find no error.

Contrary to plaintiffs' contention, the court expressly stated in its order that the jury's decision-making process could not be considered. Instead, the court relied on the jury instructions addressing damages for each claim and the fact that loss of net profits was essentially defined the same way for each. While there was testimony that placed the loss of net profits in an amount in excess of the jury's award, plaintiffs fail to point to any evidence that the amount of loss of net profits suffered from the Wilsons' negligence was different than the amount suffered from their intentional interference. Nor did plaintiffs request any instruction requiring the jury to apportion damages among the various claims. Under these circumstances, we agree with the court's ruling.

## III.

Plaintiffs next contend that the trial court erred in denying their motion to increase the damage award on the contract claim against the HOA and CPMG to the same amount awarded for the Wilsons' tortious interference claim. According to plaintiffs, the HOA's and CPMG's failure to enforce the covenants led to the contract damages. We are not persuaded.

As the trial court noted, significant evidence was introduced in support of the tort claims that did not bear upon the alleged covenant violations. Conversely, there was no claim that either the HOA or CPMG attempted to interfere with plaintiffs' business, which was the principal basis for the damages awarded. Under these circumstances, the trial court properly denied the motion.

## IV.

◼ I. Barry Rein contends that the trial court erred in denying his post-trial motion to vacate the verdict against him for abuse of process in obtaining a restraining order against the Wilsons. Because the jury found that the Wilsons had tortiously interfered with plaintiffs' business, Rein argues that "the jury could not logically have concluded" that the Reins lacked a reason to seek a restraining order prohibiting certain activities of the Wilsons. Under the instructions given the jury, we disagree.

The instruction on abuse of process included as an element that "the principal reason for Plaintiffs' action was other than to restrain Defendant from attacking, molesting or threatening the life of the Plaintiffs or threatening to do serious harm to the Plain-

tiffs." *See James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail,* 892 P.2d 367 (Colo.App.1994). Based on the evidence and inferences therefrom, the jury reasonably could find that plaintiffs' motivation in seeking the restraining order did not relate to any alleged assault or threat of assault referenced in the instruction. Hence, the court did not err in denying the motion.

### V.

■ The Reins contend that the trial court erred in denying their motion for directed verdict on the fraud claim. According to the Reins, there was insufficient evidence of what the value of the Wilsons' home would have been at the time of purchase had the Reins' representations about the use of the land adjoining the subdivision been true. We find no reversible error.

Charles Loerch–Wilson testified as an owner of the residence that when the Wilsons sold the property they only received $207,000 because of the modular homes being constructed on the adjacent parcel. According to Wilson, the property should have been worth at least $237,000. And, there was no contemporaneous objection to this testimony. Hence, even if we assume that the damages evidence should have related to the date of the Wilsons' purchase, lacking any objection, the jury was entitled to consider Wilson's testimony for any purpose, including the amount of damages resulting from the misrepresentations. *See Tumbarello v. Byers,* 37 Colo.App. 61, 543 P.2d 1278 (1975). Because this testimony supports the award, the trial court did not err in denying the motion.

### VI.

Plaintiffs contend that the trial court erred in not awarding them attorney fees against the HOA and CPMG as the prevailing parties in the litigation and also erred in apportioning its cost award. However, because the contract claims against the HOA must be reconsidered for the reasons stated in part VII of this opinion, it is inappropriate to review the contentions that relate to this defendant. For the reasons discussed in part VIII of this opinion, no fee award against CPMG is proper.

■ To the extent plaintiffs challenge the trial court's failure to award fees against the Wilsons under § 38–33.3–123, C.R.S.2001, we disagree.

As pertinent here, § 38–33.3–123(1), C.R.S. 2001, provides:

> For each claim ... in any legal proceeding *to enforce the provisions of this article or of the declaration* ... the court shall award to the party prevailing on such claim the prevailing party's reasonable collection costs and attorney fees and costs in asserting or defending the claim. (emphasis supplied)

Here, the awards to plaintiffs were based upon libel and slander, as well as intentional interference with their business. Violation of the covenants was only incidental to these claims. Plaintiffs' primary purpose in asserting the tort claims was not to enforce the covenants contained in the declaration but to secure a damage award. Indeed, as noted, a substantial amount of evidence admitted in support of these claims did not bear on the violation of the covenants. Under these circumstances, we agree with the trial court's determination that by its express language, the statute does not apply. *See Swieckowski v. City of Fort Collins,* 934 P.2d 1380 (Colo. 1997) (generally, statutory language should be interpreted consistent with the plain meaning of the words used).

### VII.

■ In their cross-appeal, the HOA and CPMG complain that the trial court erred in failing to instruct the jury that these defendants were not liable to plaintiffs on the contract claim if the failure to enforce the covenants was proper under the "business judgment rule." As the contract claim was presented in this case, we agree.

■ Unlike other types of contracts that require specific acts at specific times by contracting parties, covenant enforcement may require the exercise of discretion as to both the timing and the manner of enforcement. For example, in this case the Wilsons claimed to be exercising First Amendment

rights in their picketing and signage activities. The Wilsons also claimed to have obtained law enforcement approval for these activities. Hence, the HOA was required to make an appropriate investigation and evaluate the Wilsons' claims prior to initiating any enforcement proceedings. And, this requirement applies regardless whether Colorado Homes is pursuing either a tort claim against the HOA or a claim based upon the contract the parties agreed was in existence.

In *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P.2d 361 (1969), the supreme court addressed a homeowners association board's exposure to injunction for the failure to approve certain construction plans. The court noted that the board's refusal to approve the plans must be made in good faith and must not be arbitrary. This test is the substance of the business judgment rule.

We perceive no reason why that rule should not apply in this case insofar as the issue for resolution is whether the HOA fulfilled its obligation to enforce the covenants. *See Rywalt v. Writer Corp.*, 34 Colo.App. 334, 526 P.2d 316 (1974)(a nonprofit corporation may not be enjoined from pursuing a construction project if the directors act in good faith and in the exercise of an honest business judgment). Accordingly, we conclude that the requested instruction should have been given and that the contract claim must be retried.

Accordingly, for purposes of a new trial, and under the particular circumstances of this case, this defense may be asserted by the HOA to both the contract and the breach of fiduciary claims. *See Cohen v. Kite Hill Cmty. Ass'n, supra* (directors of homeowners association have not breached their fiduciary duty if they act in good faith and not arbitrarily).

## VIII.

■■ CPMG next contends that the trial court erred in submitting a third-party beneficiary claim against CPMG to the jury. This claim was predicated upon the theory that the lot owners in the subdivision were the intended beneficiaries of the management contract between the HOA and CPMG

to the extent that enforcement of the restrictive covenants was involved. As a lot owner, Colorado Homes argued that it was entitled to a damage award because CPMG breached the management agreement by failing to enforce the covenants. Based upon this record, however, we agree with CPMG.

■■■ A person who is not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the nonparty and if the benefit claimed is a direct and not merely an incidental benefit of the contract. While the intent to benefit the nonparty need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both. *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049 (Colo.1994).

Here, the management agreement was not introduced into evidence. Hence, we are unable to analyze the agreement to determine whether an intent to directly benefit the lot owners appears. Instead, it is just as plausible to assume that the intent was to protect and benefit the HOA in resolving any competing claims between lot owners. *See State Farm Fire & Cas. Co. v. Nikitow*, 924 P.2d 1084 (Colo.App.1995)(intent of agreement was to benefit clinics and not patients). Indeed, neither signatory to the agreement now claims that the lot owners were other than incidental beneficiaries of the instrument. *See Everett v. Dickinson & Co.*, 929 P.2d 10 (Colo.App.1996).

Under these circumstances, we conclude that this claim should have been dismissed.

## IX.

Given our disposition of the foregoing issues, it is unnecessary to address the HOA's and CPMG's contentions concerning the award of attorney fees and costs under § 38–33.3–123.

That part of the judgment against CPMG on plaintiffs' contract claim is reversed. That part of the judgment dismissing Colorado Homes' claim for breach of fiduciary duty is reversed, as is that part of the judgment against the HOA on plaintiffs' contract claim,

and the case is remanded for a new trial on that claim and on the breach of fiduciary duty claim. In that trial, the HOA will be entitled to an instruction on the business judgment rule. In all other respects, the judgment is affirmed.

DAVIDSON and DAILEY, JJ., concur.